Walker Guice and Basil Guice *v.* The State.

1. Criminal Law. *Homicide. Overt act. Evidence of previous threats. Case in judgment.*
   W. and B. were indicted for killing H. The evidence established these facts: H. was riding in an open wagon through a street in the town of N., when W. and B. stepped out of a store and fired on him from the rear or side of the wagon. They followed the wagon, and continued to fire upon him, but their shots were ineffectual till one of them ran up and placing his pistol over the side of the wagon fired a shot into H.'s body. He then jumped from the wagon and fell to the ground, and when he attempted to rise W. and B. again felled him by pistol shots and stabs with their bowie-knives; from which he quickly expired. H. was unarmed and made no resistance or struggle, except a feeble effort to escape. One of the defendants testified that he and his co-defendant, who is his brother, were standing in the door of a store when they observed H. sitting in the wagon with his hands resting in his lap; but when H. saw them he put one of his hands to his back or hip, as if to draw a pistol, and then he and his brother opened fire, believing that H was about to shoot them. After having given this testimony the defendants offered evidence of previous difficulties between themselves and H. extending through many months, in all of which H. was the aggressor; of two attempts made by

him to assassinate them; and of repeated threats to kill them, continued down to a short time before his death. The court refused to admit this evidence. *Held,* that the killing took place when the accused were in neither actual nor apparent danger, and after all apprehensions excited by the act of the deceased in putting his hand to his hip (if such apprehensions ever existed or such act ever took place) must have been dissipated; and as no precedent threats or difficulties would have constituted any defence in such circumstances, the evidence proffered was properly excluded.

2. SAME. *Judge presiding out of his district. Record. Presumption.*
Where the record in a case of homicide shows that the trial was not had before the judge of the district in which the trial took place, but before the judge of a certain other district in the State, and does not show how the latter happened to be then presiding, this court will presume that he was so doing in accordance with the statute which permits it.

3. SAME. *Examination of jurors upon voir dire. Practice.*
In the examination, upon their *voir dire,* of those offered as jurors, for the trial of a charge of murder, it is optional with the presiding judge to allow counsel to propound the questions or to do it himself.

4. SAME. *Empanelling jury. Discretion of judge.*
In empanelling a jury for the trial of an indictment for murder, the judge may properly excuse from service a man whom he adjudges to be drunk, or members of the grand and petit juries, when those on the latter jury are at the time in consultation upon a felony case.

5. SAME. *Instruction. Use of deadly weapon. Presumption. Evidence.*
There is no error in an instruction given in the trial of an indictment for murder in the following language: "If the jury believe from the evidence that the defendants, with pistols and knives, that were deadly weapons, shot and stabbed the deceased, and thereby killed him, then the use of such deadly weapons is *prima facie* evidence of malice and an intention to murder, and before this presumption is overcome it must be shown by the evidence in the case, to the satisfaction of the jury, that at the time of such use of such deadly weapons, the defendants were in immediate, real or apparent, danger of their lives or some great bodily harm from the deceased, and such danger must have been urgent, present, and imminent at the very time of the killing."

6. SAME. *Murder. Manslaughter.*
In the case above stated, the homicide was murder, if a crime at all, and partook of no element of manslaughter.

APPEAL from the Circuit Court of Wilkinson County.

Hon. J. B. CHRISMAN, Judge.

Walker Guice and Basil Guice were indicted in Adams County for the murder of Alexander Hawley. Upon the application of the defendants the venue was changed to Wilkinson County. Adams County constitutes the Twelfth Judicial District of this

State, but the order for the change of venue was made by Judge J. B. Chrisman of the Tenth District, and the record does not show how he came to be presiding in the Twelfth District. In empanelling a jury to try the case, the court conducted the examination of the jurors as to their competency, and refused to permit counsel for the defendant to ask them any questions. The third instruction was in these words : " If the jury believe from the evidence that the defendants, with pistols and knives, that were deadly weapons, shot and stabbed the deceased, and thereby killed him, then the use of such deadly weapons is *prima facie* evidence of malice and an intention to murder, and before this presumption is overcome it must be shown by the evidence in the case, to the satisfaction of the jury, that at the time of such use of such deadly weapons, the defendants were in immediate, real or apparent, danger of their lives or some great bodily harm from the deceased, and such danger must have been urgent, present, and imminent at the very time of the killing." The defendants were convicted and sentenced to imprisonment in the penitentary for life. They thereupon appealed to this court. The assignments of error are indicated in the opinion of the court, which also contains a statement of the facts established by the evidence and certain rulings of the court that were excepted to.

*T. R. Stockdale,* for the appellants.

1. The court will judicially know that Ralph North is judge in the Twelfth District, but this court cannot know that J. B. Chrisman is judge anywhere. And the court cannot presume that the name J. B. Chrisman, that happens to appear on the minutes of Judge North's court, means that " Joseph B. Chrisman, of the Tenth Judicial District, was over there and pre-sided." Had the record recited that there was an interchange of judges of the Tenth and Twelfth Districts, that would do ; but this record is too uncertain, it seems to me. In fact, by this record, it is shown that no order was made removing this case by any authority known to the law, and appellants were tried without jurisdiction in the court.

2. It was error not to allow the prisoners to examine jurors.

3. It was error to remove O. B. Hayes from the jury arbitrarily, because the judge thought he saw the juror was drunk, without taking any pains to learn whether he was drunk or not.

4. It was error to deprive defendants of the men drawn on the venire, by refusing to call McGehee and others.

5. It was error in the court below to rule out testimony offered by defendants to prove the character of deceased, and threats made by him against defendants — appellants. The court admitted Walker Guice to testify to an act of deceased, alleged to be an overt act. An act was proved that was recognized as an overt act by the court below, for unless he did so regard it the instruction on that subject would have been meaningless. Had deceased let his hands remain in his lap, had he held the lines, had he lifted his hat with one hand and stroked his hair back with the other, the court would have said, as in the *Holly Case*, there was no act proved that could be construed into an overt act; on the contrary, those would all have been regarded as innocent acts that showed no possible intention of evil. But the moment he saw appellants, he threw his hand to his hip pocket — or pistol pocket — that presented a subject of inquiry at once, — " in these days of improved fire-arms," " when a moment's delay might mean death," — an inquiry to be made in the light of facts to be proved, for that act, too, might be innocent, and it " might be fraught with deadly meaning when all preceding facts are disclosed." Had the proof been admitted and had shown that deceased was a stranger to appellants, or a friend that never quarrelled with them; or an amiable, pious youth, or an innocent school-boy on his way to college, as counsel would have it, why the act would have been a trifle, indeed; but if, on the other hand, the proof had shown that he was a violent, dangerous man, revengeful, reckless of human life, habitually carried fire-arms and other deadly weapons concealed upon his person, was skilled in their use and ready to

use them with deadly effect on small provocation, and had the reputation that he would pursue, and had pursued his enemies to the death; that he was quick to take offence and to kill; added to this that he was a bitter enemy of the accused, and considered them his enemies; that he persistently showed his venom towards accused by uttering the foulest slanders upon their family; that he had threatened, time after time, to kill defendants, up to the time of the killing; that he had made frequent attempts to carry said threats into execution, and had nearly succeeded, and only failed by the interposition of by-standers,—then the act would have had meaning, and a deadly meaning. This the proffered proof would have shown. If these things could not have been proved of the deceased it is significant that the district attorney and counsel for the State were so prompt and vigilant to keep out all proof of his character and threats. Had he been an innocent youth or a school-boy, as is claimed, the proof of that fact would have been strong against the accused. Yet they desired to open the question and the State shrunk from it, although surrounded by a cloud of witnesses that knew him. On this subject our court say: " The single question presented to the court is one of relevancy or pertinancy, and not of force or value as testimony." *Scott's Case,* 56 Miss. 290. Counsel for the State contends that, admitting there was an overt act, the proof shows that the danger, real or apparent, had passed before the appellants shot. This position is untenable.   1. Because the evidence does not support it. Walker Guice says that when Hawley saw them he immediately threw his right hand to his hip pocket, and the accused jumped across the pavement and fired at him, and although they moved down the street, the killing was done in a few seconds.   2. If the accused were in real danger at the time, and therefore justified in attacking Hawley, they were not required to cease, but might pursue their assailant and slay him to put the danger away. But the proposition itself defeats itself.   The counsel argue

that the proof shows that the danger had passed.  Showed to whom?  It would be a strange position to assume that the jury had the right to examine and decide whether a certain act foreboded danger to accused, from the circumstances and surroundings at the time, and then say that the court could on the same testimony decide that the danger that the jury were considering had passed before the killing.  It seems to me that the question as to whether the danger had passed is so clearly one for the jury, that it does not admit of argument. Had the danger passed, and if so, how long?  And should the accused have seen and realized that it was passed, under the circumstances and excitement of the occasion, depends entirely on proof before the jury.  It seems anamolous and not serious to say that the jury are the sole judges as to whether a certain act evinces danger, and then the court shall say when the danger ceases.  The very question as to whether there is danger is decided when the court decides it has ceased. Even had the danger ceased, it would have been a question for the jury whether, and if so when, the accused would be required to see and act upon that new feature, amid the excitement of the moment.  On the proposition that the danger had ceased, I think it not out of place to suggest that if the danger, real or apparent, existed at the beginning, so as to justify the accused, and therefore they were then not guilty until it became apparent to them that the danger had passed, and when the blood was up by a remembrance of all the wrongs of the past, they killed their antagonist, I submit it would not be more than manslaughter, and the testimony should have been admitted for that reason.  The third instruction is condemned by the authority of *The State* v. *Hill*, 69 Mo. 453, citing 66 Mo. ; *The State* v. *Coleman*, 6 Rich. 185 (1874–75) ; *Steinmeyer* v. *The People*, 95 Ill. 390 ; *Bryant* v. *The State*, 63 Tenn. (7 Baxt.) 67 ; *Bobb* v. *The State*, 8 Texas, — ; and particularly *Hawthorn* v. *The State*, 58 Miss. 789.  This instruction directs the jury that before the presumption of murder arising from the killing

with deadly weapons is overcome, " it must be shown by the evidence in the case, to the satisfaction of the jury, that at the time of such use of such deadly weapon, the defendants were in immediate, real or apparent, danger."

*T. R. Stockdale*, also made an oral argument.

*T. C. Catchings*, Attorney-General, for the State.

1. Conceding it to be essential that an order should be made with reference to the interchange of judges, the objection now urged, that the minutes of the Adams County Court do not show an order, comes too late. If such an order was not in fact made, objection should have been taken in that court. If it had been there made the order would have been at once properly entered. As no objection was there urged, it must, under our statute, be conclusively presumed that the order was duly made, but by the clerk's oversight omitted from the record, or possibly never placed upon the minutes at all.

2. It is the duty of a Circuit Court to see that a jury capable of trying a case is organized. The drunken juror was therefore properly dismissed. As to those serving on the grand and petit juries, the action of the judge was proper. It was not his duty to take them from these juries and put them in the box merely because their names were upon the special venire.

3. The court properly excluded the proposed testimony as to the slanderous statements concerning the sister of defendants, and as to the threat which had been made by the deceased. The slander uttered by him, no matter how foul, could not be made the basis of justification. The threats were not admissible because no overt act was committed indicating a purpose to carry them into execution. What constitutes an overt act is purely a matter of law. The court must always pass upon the act proposed to be put in evidence, to determine whether, if established by competent testimony, it is a circumstance fit to be considered by the jury. *Holly* v. *The State*, 55 Miss. 424. An overt act is something done indicating a purpose to inflict threatened violence. If the act proposed to be estab-

lished does not, in the opinion of the judge, indicate such purpose, or rather, if in his judgment it does not reasonably tend to indicate such a purpose, it is clearly his duty to refuse the proffered proof as to threats, for they are only admissible as giving color and meaning to an act which, without reference to them, indicated violence, and if there is no such act they cannot be admitted. In determining whether an overt act had been committed the judge looked at all the testimony. He knew that no person could suppose that Hawley contemplated at that time, in the place he was, and under the circumstances which surrounded him, doing or attempting to do any violence towards the Guice brothers. If we believe that he did put his hand behind him (which we do not), we do not believe, and Guice could not have believed, that Hawley entertained the sightest idea of doing any violence to anybody. The fact that he placed his hand behind him, if it had been done while he was on foot and upon meeting the Guices in the street, might have been an overt act, because, under those circumstances, it might have been interpreted as indicating an intention to do violence to them. But the act when performed by him, while seated in a wagon, being driven along the street and going past the place where they were standing, has no significance whatever, and none could have been attached to it by any reasonable man. It is therefore insisted that no overt act was established, or attempted to be established, and that consequently no foundation was laid for the introduction of the threats. But the threats were properly excluded, even if the placing of his hand behind him can be regarded as an overt act. If the Guices could have inferred that he intended doing violence to them, their minds must have been speedily disabused of such an impression, for it is not pretended that this motion of his hand was succeeded by any other act, either really or apparently hostile. Yet these men, with a brutal and savage ferocity, never approached by anything which has ever come within my knowledge, pursued him, shot him, and stabbed him to death. His

efforts to escape were frustrated by them purposely. No threats could justify such inhuman and barbarous and unnecessary homicide as defendants, by the unanimous testimony of the witnesses, are shown to have committed.

4. The third instruction for the State does not, as claimed by counsel, indirectly exclude from the attention of the jury all the testimony except that the homicide was accomplished by deadly weapons. On the contrary, it informs them that the presumption arising from the use of deadly weapons is not to prevail if they believe from the evidence in the case that there was real or apparent danger to them at the time.

5. As to the instructions asked by defendants, but refused, it is sufficient to say that they are either covered by those granted or are inapplicable to the case as presented to the jury.

*W. T. Martin,* for the State, argued the case orally.

CHALMERS, J., delivered the opinion of the court.

On the 13th of October, 1881, Alexander Hawley, a youth nineteen years of age, rode down Main Street, in the city of Natchez, in an open wagon, accompanied by a negro man, who sat on the seat by his side. As he passed the store of one Bahin, Walker and Basil Guice sprang across the pavement and opened fire upon him from the rear or side of the wagon. The first shots did not attract the attention either of himself or of the man riding with him. Two or three shots had been fired before either of them turned their heads, during which time the wagon was slowly pursuing its course, followed by the defendants, firing as they advanced. When the occupants of the wagon simultaneously looked back and saw that they were being fired on, Hawley rose up, but was immediately pulled down to the floor of the wagon by his companion, who sought thus to preserve his life. One of his assailants, running up to the wagon, placed his pistol over its side and fired into his body. He sprang from the vehicle to the ground, falling upon his hands and knees, and as he struggled

to rise both of his assailants closed in upon him, and first with their pistols and then with bowie-knives quickly put an end to his life.   He was unarmed and made no sort of resistance or struggle, save a feeble attempt to get away.   These facts are established by the testimony of many witnesses and denied by none.

Both of the appellants testified in person, but neither of them questioned the truth of the facts as detailed above.   One of them stated that as he stood with his brother in the door of Bahin's store he observed Hawley sitting in the wagon with his hands resting in his lap ; that as Hawley saw them he put one of his hands quickly to his back or hip, as if to draw a pistol, when his brother and himself sprang across the pavement and opened fire, believing at the time that Hawley was about to shoot them.   This simple statement was his entire testimony, he pausing abruptly without any further account of what followed.

Having made this proof, the defendants proffered much evidence of previous difficulties between themselves and deceased, extending through many months, in all of which Hawley had been the aggressor ; of two attempts made by him to assassinate them, and of repeated threats to kill them, continued down to a short time before his own death.   This evidence was by the court excluded, and this action of the court is the most important ground of error assigned here.

It is settled law in this State, that proof such as was here offered is always admissible in evidence, where anything that can fairly be construed as an overt act towards the immediate commission of a dangerous assault can be shown to have been done by the person slain, and that if there be even a doubt as to whether such act was done, evidence such as was here offered should be received.   *Holley's Case*, 55 Miss. 424 ; *Kendrick's Case*, 54 Miss. 436 ; *Spring's Case*, 58 Miss. 743.

The supposed overt act in this case was the putting of his hand behind him or upon his hip, by Hawley, and it would certainly be a liberal stretch of the law to concede that it was

such under the admitted facts of this case. He was passing down the street in a wagon, twenty-five feet distant from the door in which defendants were standing, with the negro man sitting on the side next to defendants, when, upon recognizing them, he quickly removed his hand from his lap to his hip. If the defendants had forthwith fired, and by some extraordinary luck or skill had avoided killing the negro and succeeded in killing him, we will not now say that the proof as to previous threats and difficulties should have been excluded. Whether deceased's act would have furnished any sort of reasonable ground of apprehension would have been a question for the jury.

Can any such concession be made under the facts here proved by the State, and not controverted by the defendants? If their apprehensions were aroused by the act of the deceased, must they not have been wholly dissipated by his subsequent conduct, and can there be any excuse for saying that they were still laboring under the belief that their own lives were in danger at the time when they so cruelly and barbarously took his? If my most deadly enemy upon meeting me thrusts his hand into his pocket in a manner apparently threatening, and I instantly shoot him, there is some justice in my demand that I shall be allowed to lay before the jury our antecedent relations, with a view of aiding them in arriving at a conclusion as to whether I had reasonable ground to believe myself in danger; but if, removing his hand or holding it still in his pocket, he quickly passes on, can I fire at his back, and, failing to hit him, pursue and butcher him while he is striving to escape? His act at most has been an equivocal one, and if I respond by killing him, I must at least do so before it has lost its equivocal and threatening aspect. My plea being self-defence, the necessity for defending myself by taking life must be a thing of the present and not of the past. That it has existed is a matter of no moment, if it exists no longer; and while this rule might well be relaxed where the overt act was undoubtedly and unmistakably hostile, as the actual drawing of a deadly weapon, it must be inflexible

where it was originally of doubtful import, and was quickly discovered to be harmless.

In the one case, the abandonment of the design to make a deadly assault might be feigned or temporary, with a view of instantly renewing it when the antagonist should be off his guard; in the other, it is demonstrated to the assailant that his original apprehensions were wholly without foundation.

Our conclusion is that the killing in this case clearly, and we might almost say confessedly, took place at a time when the accused were in neither actual nor apparent danger, and after all apprehensions excited by the act of the deceased in placing his hand upon his hip (if any such apprehensions ever in truth existed, or any such act ever in fact took place) should have been and must have been dissipated; and inasmuch as no precedent threats or difficulties would under such circumstances have constituted any defence, they were properly excluded by the court.

We notice briefly the other points mainly relied on.

It was not necessary that the record should show how Judge Chrisman came to preside in Adams County. We officially take notice of the fact that he is a circuit judge in this State, and when we find him holding a court outside of his district, the legal presumption is that he was so doing in accordance with the statute which permits it.

The course taken by the court below in the examination of jurors upon their *voir dire* was not improper. It is optional with the court to allow counsel to propound questions to proffered jurors or to do so itself. *Powers v. Pressgrove*, 38 Miss. 227.

The court properly excused from service on the jury the man who was judged by it to be drunk, and also those who were already serving upon the grand and petit juries; those on the petit jury being at the time engaged in consultation upon a felony case.

The instructions for the State were correct. The only one which can be regarded as the least questionable is the third,

which seems at first blush to be similar to the one condemned in *Hawthorn's Case*, 58 Miss. 778, but upon closer inspection is seen to be free from the vice of devolving upon the accused the burden of overcoming by the production of evidence the presumption of malice arising from the use of a deadly weapon, and only to require that such presumption shall be rebutted "by the evidence in the case," which means, of course, all the evidence ; and this is correct.

The instructions asked by and refused to the defendants, were properly refused under the facts of the case. Most of them were based upon a theory of the facts and law which is rejected in the former portion of this opinion ; others were covered by those given, and still others sought an enunciation of the law as to the crime of manslaughter, and were properly refused, because there was no element of manslaughter in the case. The killing was either murder or justifiable upon the ground of self-defence. There can be no claim of legal heat of passion arising from the act of an enemy in making a supposed hostile demonstration.

If the killing under such circumstances is not justifiable, it certainly is not manslaughter.

Affirmed.