THOMAS BROWN v. STATE OF MISSISSIPPI.

[40 South. Rep., 737.]

1. CRIMINAL LAW. Homicide. Evidence. Previous difficulty. Woman in the case. Flight.

In a prosecution for homicide it was error to exclude testimony offered by defendant to show:

(a) The details of a difficulty between deceased and defendant shortly before the killing, although the state had not proved that the previous difficulty occurred; and

(b) The whereabouts at the time of the killing of the woman about whom and at whose house the previous difficulty had occurred; and;

(c) Turbulence, violence, and rioting immediately after the homicide in the town where it occurred, whence defendant fled, as a reason which might have induced him to have sought safety in flight.

2. SAME. Defendant not controlled in order of testimony. Not required to disclose purposes in advance.

And in such case it was error for the trial court:

(a) To attempt to control the defendant in the order in which he should introduce his testimony; and

(b) To require the defendant to disclose in advance the purpose for which he desired to prove certain facts upon cross-examination of a witness for the state.

FROM the circuit court of, first district, Carroll county.

HON. J. T. DUNN, Judge.

Brown, the appellant, was indicted for the murder of Murdee Williams, by the grand jury of Montgomery county, where the

homicide took place. He was tried in that county, convicted, and sentenced to suffer death, from which he appealed to the supreme court—the first appeal, where the conviction was reversed and a new trial granted. *Brown* v. *State,* 83 Miss., 645 (s.c., 36 South. Rep., 73).

The venue having been changed to the first district of Carroll county, the appellant was tried a second time and was again convicted and sentenced to suffer death, from which conviction and sentence he again appealed to the supreme court—his second appeal, and this conviction was reversed and a third trial awarded. *Brown* v. *State,* 85 Miss., 511 (s.c., 37 South. Rep., 957).

Upon remand of the case the third trial was had; defendant was a third time convicted and sentenced to suffer death, and appealed therefrom—his third appeal, the present one, to the supreme court.

The facts are stated in the opinion of the court.

*George A. McLean,* and *Pat Luter,* for appellant.

There is no dispute as to who the aggressor was in the difficulty which occurred forty minutes, and the one which occurred two weeks before the homicide, and this record shows that the appellant was seriously wounded when the killing did occur; and the fact that there is a conflict in the evidence as to who the aggressor was in the fatal encounter, under the decisions of this court permits the introduction of threats and previous difficulties to show who the aggressor was in the last difficulty. *Guice* v. *State,* 60 Miss., 723; *Hawthorne* v. *State,* 61 Miss., 749; *Holly* v. *State,* 55 Miss., 424; *Kendrick* v. *State,* 55 Miss., 448; *Spivey* v. *State,* 58 Miss., 864; *Foster* v. *State,* 70 Miss., 755 (s.c., 12 South. Rep., 822).

In this case, *Brown* v. *State,* 85 Miss., 513 (s.c., 37 South. Rep., 957), WHITFIELD, C. J., delivering the opinion of the court, said: "Under the peculiar circumstances of this case as

disclosed in this record, it was fatal error to refuse to allow the defendant to show on cross-examination of Scott Thompson, introduced by the state in rebuttal, the details of the previous difficulty." The opinion further states as follows: "The record in this case, we may add, makes it perfectly plain that the justice of the case required, after the state had been permitted to prove that such difficulty had occurred, that the defendant should be allowed to show the details of the difficulty in order to demonstrate who was the aggressor in the difficulty resulting in the killing." As we understand the decision above mentioned and the language quoted, the court recognized that there was a conflict in the testimony as to who was the aggressor, and that this case clearly comes within the rule laid down in the *Guice case* above quoted and the other authorities, and that the court fully realizes and recognizes the intimate connection of these two difficulties—the one occurring two weeks before the fatal one— and that the ingenuity of counsel to attempt to show by argument that there was no connection falls in the face of the decision heretofore rendered in this case, as well as the mistaken view of the trial court in excluding this testimony.

When the state was permitted to show flight, the defendant to meet this issue should have been permitted to show his reason for fleeing and the cause of his flight. Within the space of a half or three-quarters of an hour after the homicide, Oliver Bibb was shot to death—although an innocent man—by a mob for a supposed connection with this homicide. Was it not reasonable for this defendant to flee, and as matter of explanation of his conduct is it not right and legal that this testimony of the witness, Branch, should have been admitted.

*J. N. Flowers,* assistant attorney-general, for appellee.

The three juries which have convicted appellant have been called upon to determine who tells the truth, appellant or the state's witnesses. These three juries have accepted the account

of the transaction given by Thompson. They have been fully warranted in so doing. If his story be true, as these juries have believed, this accused is guilty of murder. These juries have settled that a murder was committed. There is no doubt of Brown's ability to have protected himself according to his own story. He left the scene of the first difficulty, went away and stayed some little time, then came back and put himself in a position where he would necessarily invite the attention of young Williams if he should come that way. In the meantime it appears that appellant had armed himself for the fight and was prepared to stand his ground.

In the trial of one case the court will not undertake to try every other case growing out of difficulties between the same parties; and no testimony in any trial ought to be admitted which does not throw light upon the issue to be submitted to the jury. How, under the facts of this record, could the details of previous difficulties throw light upon the question as to who was the aggressor in this one?

The court said, when this case was heard the last time, that it was error for the trial judge to admit proof by the state of the fact of the difficulty unless the accused should be allowed to show the details of it. But on the trial shown by this record the state did not prove the fact of a previous difficulty. The accused proved that there had been a difficulty and then undertook to show the details of it.

I have been unable to find in the books but one exception to the rule that the proof must be confined to the difficulty out of which the case on trial grew, and that is in those rare cases where the previous difficulties have been so frequent, the same party always being the aggressor, that it could be reasonably inferred that the party who had formerly been the aggressor in such difficulties was the aggressor in the instance involved in the present trial. In cases of this kind the frequent assaults demonstrate the standing, continuing purpose. They evidence

design as conclusively as threats. They show the existence of the design; the threat is only a verbal expression of it. The party commits the act instead of threatening to commit. We reason that he harbors purpose to do it simply because he does it when the occasion presents itself. It is only when previous difficulties have been so frequent and uniform as to show that the aggressor in them entertains a standing purpose to do harm to the person assailed that proof of them is admissible.

The case at bar shows no such state of facts. It does not appear that the deceased assaulted Brown whenever he found him in the neighborhood of these women; it does not even appear that the deceased knew these women or cared anything about them. It does not appear that he objected to Brown's paying them attention; it does not appear but that they fully understood each other in this regard. As far as this record shows, there is not the slightest connection between the fatal difficulty and the one of a few weeks before.

There is no theory and no reason upon which the exclusion by the court of the facts of the former difficulty can be condemned unless it is that these former difficulties proved that young Williams harbored the design to assault or whip this accused every time he saw him or every time he found him in the neighborhood of these women, and there are no facts shown by the record, or suggested by counsel in his statement to the court, when the occasion demanded a full statement, upon which to base such a reason or such a theory.

*Guice's case,* relied upon by counsel, does not condemn the action of the lower court. In that case this court was dealing with threats. Threats may evidence design; repeated similar difficulties may also evidence design. That case is not authority here unless the proof offered of the former difficulties is of such nature as to evidence a standing, harbored design. That the deceased and the defendant had a difficulty on a former occasion, in which the deceased was the aggressor, does not of itself

even tend to show that on the present occasion he was the aggressor. The authorities referred to in *Guice's case* and those cited by counsel in his brief all deal with threats and not with previous difficulties.

Argued orally by *J. N. McLean,* for appellant, and by *J. N. Flowers,* assistant attorney-general, for appellee.

CALHOON, J., delivered the opinion of the court.

We said, when this case was before us on a former appeal (85 Miss., 511; 37 South. Rep., 957), and we repeat again: "The record in this case makes it perfectly plain that the justice of the case required, after the state had been permitted to prove that such difficulty had occurred, that the defendant should be allowed to show the details of the difficulty in order to demonstrate who was the aggressor in the difficulty resulting in the killing." It is true that on the trial, the proceedings of which are presented in the present record, the state did not itself prove that the previous difficulty had occurred; but the defendant cannot by such tactics be deprived of his legal rights. The testimony as to the previous recent difficulty between the appellant and the deceased was not made competent alone by the fact that the state had shown affirmatively the fact of the difficulty, but by reason of that principle of law, well settled in this state, that wherever there is doubt, confusion, dispute or conflict as to the origin of the difficulty, or as to who was the aggressor in the difficulty which resulted in the death, and when such fact is the pivotal one in the case, testimony of uncommunicated threats, and the nature and character of previous difficulties, wantonly provoked by the deceased, is always admissible, provided the testimony shows some overt act on the part of the deceased at the time of the fatal encounter. As said by this court in the *Guice case,* 60 Miss., 723: "It is settled law in this state that proof such as was here offered (*i. e.,* of previous difficulties between appellant and deceased in which deceased

had been the aggressor) is always admissible in evidence, where anything that can fairly be construed as an overt act towards the immediate commission of a dangerous assault can be shown to have been done by the person slain, and that if there by even a doubt as to whether such act was done, evidence such as was here offered should be received." See, also, *Holly's Case,* 55 Miss., 424; *Kendrick's Case,* 55 Miss., 436; *Spivy's Case,* 58 Miss., 862; *Newcomb's Case,* 37 Miss., 400; *Johnson's Case,* 66 Miss., 189 (s.c., 5 South. Rep., 95). This is settled law in this state, and we do not understand how the trial court could have erred in following the plain statement made in the opinion upon the former trial. We would reverse the case upon this ground alone, even if it were the sole error in the record. Courts should not attempt to whittle away the rights of defendants upon trial for their lives. Every ruling should resolve any doubt in favor of the accused.

But this is by no means the only error in the present record. It was error in the court to attempt to control the counsel for appellant in the order in which he should introduce his testimony. Nor was it fair to the appellant that, upon the cross-examination of the most important witness for the state, counsel for the defendant should have been called upon to disclose in advance the purpose for which he desired to prove the whereabouts of the two negro women—Selina Harvey and Bertha Sing—just before the homicide. The right of cross-examination is not to be limited by the trial judge. Nor can it be conditioned upon counsel advising the court, opposing counsel and the adverse witness, in advance, his intention or the end sought to be arrived at by the cross-examination. It is common knowledge among practitioners that the truth can often be wrung from the lips of a corrupt or unfriendly witness only by concealing the real object of the interrogatory.

It was error for the court to refuse to permit the defendant's counsel to prove the whereabouts at the time of the homicide

of the negro women about whom and at whose house the pre-
vious difficulty between the deceased and appellant was alleged
to have occurred only a short time before the killing.    This
testimony, showing their presence at the negro dance hall where
the killing occurred, taken in connection with the previous diffi-
culty occurring at their house, should have been submitted to
the consideration of the jury.

So, also, it was error in the trial court to restrict the defend-
ant in proving, or to abridge his right to prove, the conditions
of turbulence, violence and rioting in the town where the killing
occurred immediately after the homicide.    If admissible for no
other purpose, it was clearly so at least to show the reason which
might reasonably have induced the defendant to have sought
safety in flight.    Of course the conduct of the mob upon the
night of the homicide, so far as relates to their acts towards
others, was not in all its details admissible; but it was clearly
competent for the defendant to show the intense excitement
existing at the time, and from this it might well be that the jury
would reasonably have attributed his flight to a cause other than
his guilt.    It is the duty of this court to see that no man shall
suffer the extreme penalty of the law unless the record plainly
shows that he has had a perfectly fair and impartial trial and
been convicted according to due form of law; and this duty we
shall unshrinkingly discharge.

*Reversed and remanded.*

WHITFIELD, C. J., delivered the following specially concur-
ring opinion:

I concur upon the single ground that the previous difficulties
between the appellant and the deceased ought to have been
under the peculiar circumstances of this case admitted in evi-
dence.    The whole gist of this case is whether, as contended by
the appellant, all three of the difficulties within the space of
two weeks between appellant and deceased, were occasioned by

the same common cause, their relations to the two women named in the record, and whether as the result of these relations the deceased had been the aggressor in this series of difficulties; the three named, abusing, assaulting, and always first attacking the appellant. That, shortly stated, is the kernel of this case, which is here for the third time.

We have said before that the justice of this case requires that these difficulties ought to be admitted in evidence. The reason given by the law books is this: "That where there have been several difficulties between the same parties, growing out of a cause common to them all, so that all the difficulties logically form one connected and continuous line of hostile conduct on the part of the deceased towards the slayer, such hostility being manifested in every difficulty by the deceased's having been the aggressor in all such cases, the previous difficulties should be admitted, and their details should be admitted, so far as such details are necessary to explain the motive of the deceased, manifested by such continuous line of hostility on the part of the deceased towards the appellant, resulting in the series of difficulties due to the same cause and the fact that in all he was the aggressor, provided, always, that the evidence shall show some overt act on the part of the deceased at the time of the killing against the appellant. The thought is—the philosophy of the thing is—that in all cases of that character, each difficulty resulting from the same cause has been inspired by the same motive, shows the deceased to be always the aggressor, and thus presents a continuous system or series of difficulties practically amounting to a continuous assailing of the appellant by the deceased whenever they meet, due to the same motive throughout. This is the principle of the *Guice case*, 60 Miss., 723, to which especial attention is directed. In 1 Wigmore on Evidence, sec. 396, and the authorities grouped in note 5, the principle is fully explained. This work (in the judgment of the writer the ablest that has ever appeared on the subject of evi-

dence) puts the matter clearly and philosophically. He says: "Where an emotion of hostility at a specific time is to be shown, the existence in the same person of the same emotion at another time is, in general, plainly admissible. What the limit of time should be must depend largely on the circumstances of each case, and ought always to be left to the discretion of the trial court." In 1871, LOCHRANE, C. J., in *Pound* v. *State,* 43 Ga., 88, 132, said: "No general rule can be distinctly traced over this disputed ground of judicial controversy. All we may assert, within the principle recognized, is that there must be some link of association, something which draws together the proceedings and subsequent acts, something which presents cause and effect in the transaction. As if A, jealous of his wife, finds B with her, and forbids him speaking to her, and afterwards meets B and her together, though weeks and even months had elapsed, the previous difficulty, though slight, would be proper evidence to go to the jury in case of homicide. But if A afterwards met B and upon a new cause of quarrel distinctly separate from the first, the difficulty sprang up, the acts relative to the first ought to be excluded as not throwing light upon the homicide and the fact of unfriendly feeling existing is all which would be permitted." In note 5 are cited two cases to which we direct special attention: *Daniel* v. *State,* 103 Ga., 202 (29 S. E. Rep., 767), and the *State* v. *Westfall,* 49 Iowa, 328.

We wish to give our emphatic approval to the discriminating and painstaking methods of Prof. Wigmore in making his citations of cases. In the notes he does not merely cite a long list of cases, but he gives a succinct statement of the holding in each case, as was the custom of that other great law writer, Prof. Pomeroy. This sort of law-book making helps beyond all expression the courts in their labors. In *Daniel's case, supra,* the following quotation from the case of *Monroe* v. *State,* 5 Ga., 85, is approved: "Repeated quarrels may be shown between

the parties to establish *mala animo;* but you cannot go back to a remote period, and prove a particular quarrel or grudge, unless it be followed up with proof of a continued difference following from that source." Again, the following quotation from the case of *Coxwell* v. *State,* 66 Ga., 312, is also approved: "Evidence of previous quarrels has always been held admissible, unless they were separate and independent acts; but wherever they were continuous from the inception to the termination of the homicide, and unite the preceding with the subsequent acts, thereby shedding light upon motive and explaining conduct, they are admissible." We have made these two quotations from *Daniel's Case* in 103 Ga. and 29 S. E. Rep., and the quotation from Wigmore on Evidence, for the purpose of approving them as by far the clearest exposition of the true principle governing the admission of evidence of former difficulties we have anywhere found. The general rule, of course, is that evidence of a former difficulty is inadmissible; but the exception is quite as well established, the exception being the one set out in the quotations we have given.

One other point should be carefully noted. It is often said that evidence of a previous difficulty may be admissible in proper cases, but that no details of such difficulty can be given. This is not an exact statement of the law. Such details should be entered into, but only so far as such details are essential to show the motive, the common motive, the common purpose, running through all the previous difficulties. The same principle applies here as applies to the introduction in evidence of other crimes than the one with which the defendant stands charged in the particular indictment. The general rule there is that no evidence of a distinct and independent crime is ever admissible. But if several crimes are so blended or connected that they form, as said by Mr. Elliott, in vol. 4, sec. 2720, of his work on evidence, "an indivisible criminal transaction, and a complete account of the transaction for which the accused is being tried

cannot be given, without showing the others, any or all of them may usually be shown, at least where the offense for which he is being tried is, itself, a detail of the whole criminal scheme." And as to admitting the details of such other crime Mr. Elliott, concluding the section, says: "But the particulars of a collateral crime should not, ordinarily, be gone into further than they are relevant to the purpose for which the evidence is competent." So, here, the details of these three previous difficulties should be gone into only so far as they may show a common motive, controlling deceased in all of them, resulting, if the facts should so show, in his being the aggressor throughout.