307 So.2d 430 (1975)
Eddie James WASHINGTON
v.
STATE of Mississippi.
No. 48215.
Supreme Court of Mississippi.
February 3, 1975.
Burgin, Gholson, Hicks & Nichols, Robert B. Prather, Columbus, for appellant.
A.F. Summer, Atty. Gen. by Ben H. Walley, Asst. Atty. Gen., Jackson, for appellee.
Before RODGERS, SMITH and SUGG, JJ.
SMITH, Justice:
Eddie James Washington was tried in the Circuit Court of Clay County upon an indictment charging him with the murder of one Walter Mayes. The jury found him guilty of manslaughter and he was sentenced to serve a term of 20 years in the penitentiary. From the judgment entered pursuant to the verdict he has appealed.
It appears that on July 4, 1972, Mayes' automobile had been run into and damaged while parked at the Redonus Cafe. Mayes was unable to learn who had done this. However, from that date Mayes apparently never let up in his efforts to discover the identity of this person. About 3 weeks prior to the encounter which resulted in Mayes' death at the hands of Washington, Mayes had a conversation with one Louise *431 Cousins. Cousins was offered as a witness for the purpose of establishing an uncommunicated threat made in the course of the conversation by Mayes against Washington. The court, on objection, refused to allow the testimony of the threat to go to the jury. The court did allow the witness to testify out of the presence of the jury for the purpose of the record. Her testimony, in part, was as follows:
Q. You said you were in Mathiston and Walter Mays called you over?
A. Yes.
Q. What did he say to you?
A. He asked me did I know a little curly headed, black curly boy by the name of Washington. I said, "Oh, you are talking about Eddie James Washington." He said "Yea." He said, "Next time " He said the next time I lay my eyes on him that I am going to kill him. And so I made this remark. I told him I didn't carry news. I told him if he had anything he wanted to tell Eddie James, I said "tell him youself." And I walked off.
Q. What sort of person was Walter Mays, Louise?
A. Well, he liked to argue, and you know.
Q. Did you ever see him carry a pistol?
A. Yes.
Q. State whether it was on more than one occasion. Did you see him carrying a pistol more than once?
A. Yes, sir.
......
Q. Louise, would you give the Court the best estimate of what period of time prior to the shooting this was?
A. Well, it was probably, I think about three weeks before Christmas.
It is contended on behalf of Washington that the exclusion of this testimony constituted prejudicial error, requiring reversal. We are compelled to agree.
The defense in the case was self-defense. It was stipulated that both Washington and Mayes, in the fatal encounter, had been armed with loaded pistols. As they met face to face on the occasion of the homicide, again at Redonus Cafe, Mayes challenged Washington as having been the person who had run into his car on July 4, and stated that he, Mayes, should knock Washington's brains out. Washington testified that it was following this that Mayes had reached for his gun and that he, Washington, had been compelled to fire in necessary self-defense. The evidence, including the testimony of Washington, was conflicting and created a sharp factual issue as to who had been the aggressor.
Although the killing stemmed from the incident involving Mayes' car, which had occurred on July 4, some 5 or 6 months previously, Mayes still had not abandoned his determination to identify the man who had damaged his car. The testimony of the witness was not cumulative but constituted the only evidence of an explicit threat uttered against Washington by Mayes. Moreover, it was of a threat which appears to have derived from the same incident which, less than 3 weeks after the threat was made, brought about the fatal shooting. It was not too remote, in time, particularly in view of the overall circumstances of the case. This Court dealt with the subject in Rucker v. State, 248 Miss. 65, 158 So.2d 39 (1963). In Rucker the Court said:
In the case of Brown v. State, 88 Miss. 166, 40 So. 737, this Court, following the case of Guice v. The State, 60 Miss. 714, stated that there is a "principle of law, well settled in this state, that wherever there is doubt, confusion, dispute, or conflict as to the origin of the difficulty, or as to who was the aggressor in the difficulty, which resulted in the death, *432 and when such fact is the pivotal one in the case, testimony of uncommunicated threats, and the nature and character of previous difficulties, wantonly provoked by the deceased, is always admissible, provided the testimony shows some overt act on the part of the deceased at the time of the fatal encounter." The opinion also contained an admonition on the part of trial courts not to whittle away the rights of defendants upon trial for their lives. It further pointed out that "Every ruling should resolve any doubt in favor of the accused." See also Lee v. State, 160 Miss. 618, 134 So. 185, where the above rule was adhered to, and it was held that a difficulty, which occurred in July preceding the killing in August, was not too remote.
In Clark v. State, 123 Miss. 147, 85 So. 188, the opinion said this: "The evidence as to who was the aggressor in the fatal encounter, on the solution of which the guilt or innocence of the appellant depends, being in irreconcilable conflict, the state of mind of each of the participants therein toward the other was a material inquiry, and any evidence pertaining thereto was relevant and, unless incompetent on some other ground, should have been admitted.
"`The law furnishes no test of relevancy. Unless settled by statute or controlling precedent, relevancy is to be determined by logic, being the application of the principles of reason, judgment, and systematic arrangement to the matter in hand. All facts which tend either to sustain or to impeach a logically pertinent hypothesis are admissible. But no facts are relevant which do not afford a reasonable presumption or inference as to the principal fact in issue, or which do not make more or less probable such a hypothesis.'" The opinion, supra, cited 1 Wharton's Criminal Evidence, § 24; 11 Ency. of Evidence, 174. See also Self v. State, 178 Miss. 560, 174 So. 44.
In Hendrix v. State, 172 Miss. 589, 161 So. 151, the state of enmity on the part of deceased toward defendant had existed for "some months." The trial court refused to admit all of the threats and previous manifestations. For that reason, this Court, citing Brown v. State, supra, reversed the judgment. See also 40 C.J.S. Homicide §§ 241-242, pp. 1176-1178. (248 Miss. at 71, 158 So.2d at 42).
The July 4 incident involving Mayes' automobile, the belief on the part of Mayes that Washington had been responsible for it, and his determination to call him to account, brought on the encounter which resulted in the death of Mayes. We think the testimony as to the threat was relevant and material upon the issue as to who had been the aggressor, and that the jury, as the trier of facts, should have been permitted to hear it.
The case will be reversed and remanded for a new trial.
Reversed and remanded.
GILLESPIE, C.J., and PATTERSON, INZER, ROBERTSON, WALKER and BROOM, JJ., concur.