464 So.2d 516 (1985)
Randy Avery BROWN
v.
STATE of Mississippi.
No. 54872.
Supreme Court of Mississippi.
February 20, 1985.
*517 Kenneth C. O'Neal, Grenada, for appellant.
Bill Allain, Atty. Gen. by Catherine Walker Underwood, Asst. Atty. Gen., Jackson, for appellee.
En Banc.

ON PETITION FOR REHEARING
DAN M. LEE, Justice, for the Court:
In this appeal we are asked to decide to what extent a criminal defendant is allowed to present evidence corroborating his testimony as to his state of mind at the time he allegedly committed an aggravated assault and where his sole defense is that of self defense. The original opinion in this case (decided without dissent) was the subject of a Petition For Rehearing filed by the State. While we deny the State's petition, we nonetheless withdraw our original decision and substitute this one in its stead.
On March 3, 1982, Connie Liddell was sitting in his car in the parking lot of the Golden Star, a nightclub. Beside the Golden Star was a laundromat and a hair salon. Directly across the road was a playground. As Liddell sat in his car, Brown crossed the street from the direction of the playground. When Liddell saw Brown coming he got out of his car and the two approached each other. Liddell stated "We got to talking and we argued and stood up in each other's faces and was talking." Liddell stated that the argument was about "past things going on." Apparently the "past things going on" was a personal feud between the two of them that had lasted for close to a year. This feud apparently stemmed from an argument that Brown had with Liddell's uncle. Liddell stated that he tried to get Brown to go behind a building and fight but "The next I knew he shoved me off and come up shooting."
Liddell testified that after he was shot he ran behind his car and then chased Brown down an alley between the beauty salon and the Golden Star. Liddell claims to have then quit the chase and gone home. On cross-examination Liddell stated that the reason that he, an unarmed man, chased Brown, an armed man, was because "I wanted him that bad." Liddell admitted that Brown did not say anything to him before Liddell got out of his car and approached him. Liddell stated "When I got close to him I asked if he was ready to have his ass beaten." This was before Brown had said anything to Liddell. Liddell stated that he had not tried to start a *518 fight but that "It was only words." Liddell denied ever having previously threatened Brown or passing any threats on to him through Brown's sisters. Liddell also denied ever exhibiting a gun to Brown.
Brown took the stand in his own defense and testified that he pushed Liddell only after Liddell kicked him. He stated that he pulled his gun because of prior threats and gun play Liddell made against him. Brown then detailed a number of incidents in which he claimed Liddell had threatened him. The first of these confrontations was at a car wash where the two saw each other. Brown stated that Liddell went to the back of his car, opened his trunk and pulled out a pistol and displayed it to him in a threatening manner. The second such incident occurred when Brown was coming out of a store and Liddell rode by. Liddell stopped his car and told Brown he wanted to whip him. With that Liddell went to the car trunk, pulled a gun out and Brown left. Brown stated that on another occasion he was at the playground across the street from the Golden Star with his brother. Liddell came over and started shadow boxing in front of the car with a gun stuck in the back of his pants. Brown also testified that he had been told by his sisters that Liddell came in the laundromat when they were there with a stick in his hand threatening to whip Brown. Brown's brother and sisters corroborated his testimony regarding the prior threats.
At trial, the circuit judge refused to allow Brown to testify that only two weeks earlier he had sought legal assistance because of his fear of Liddell. Brown was not allowed to testify that he had called the police for assistance after being threatened by Liddell because the trial court concluded it was "self serving." This was the only objection sustained on the "self serving" ground.
Brown was prohibited from testifying that he had seen the city prosecutor for assistance because of his fears of Liddell on the ground that it was irrelevant. The trial court additionally prohibited Brown from introducing the testimony of the city prosecutor, Allan Purdie. On proffer, offered expressly to establish Brown's state of mind, Purdie's testimony was that Brown had come to him only two weeks before the shooting seeking some kind of legal protection from Liddell's harassments and threats. Purdie explained to Brown that he had a right to defend himself. The trial court sustained the state's objections to this evidence on the grounds that it was "irrelevant," and "unreasonable."
It is important to remember that the only defense asserted by Brown was that of self defense. Because the key to the defense of self defense is the defendant's state of mind at the time of the incident and, because a defendant's testimony is often viewed with great suspicion, corroboration as to the defendant's state of mind is critical. Common sense and any lawyer who has defended a case of this nature will tell you that this is undeniably true. Brown's action in attempting to prevent any further trouble with Liddell by seeking the assistance of law enforcement officers is highly relevant to his state of mind leading up to the shooting. Since it is the jury's role to pass on the reasonableness of Brown's actions, they are entitled to be made fully aware of all relevant facts which reflect apprehension, fear or anxiety in his state of mind. Because such apprehension, fear or anxiety is a crucial element of self defense, the exclusion of this testimony had the effect of "whittling down" Brown's defense. Eaton v. State, 200 Miss. 729, 28 So.2d 230 (1946).
Very recently, in Jackson v. State, 426 So.2d 405 (Miss. 1983), we wrote on whether a defendant may be allowed to introduce evidence of prior actions on the part of the victim which amount to harassments, threats and assaults directed toward the defendant. Jackson was being tried for the murder of her estranged lover. She claimed that the killing was in self defense. During the trial she attempted to introduce justice court records regarding convictions of the victim as the result of complaints made by her. The circuit court refused to allow those records to be admitted into *519 evidence, although it did permit testimony as to the reputation of the deceased for peace and violence and for carrying firearms. On appeal we reversed the refusal of the trial court to allow the justice court records to be admitted into evidence. On that point we held:
Under the undisputed evidence in this case, it is our opinion that much flexibility should have been given appellant in presenting prior harassments, threats and assaults directed toward her. Such evidence is material on the motives of both appellant and deceased in presenting the incidents that occurred in front of the store. The attitude, relationship and feelings of the accused and the deceased toward each other are material. Harley v. State, 345 So.2d 1048 (Miss. 1977); Rucker v. State, 248 Miss. 65, 158 So.2d 39 (1963); Clark v. State, 123 Miss. 147, 85 So. 188 (1920); Brown v. State, 88 Miss. 166, 40 So. 737 (1906); Guice v. State, 60 Miss. 714 (1883); and Josephine v. State, 39 Miss. 613 (1861).
426 So.2d at 408.
In an earlier case, Lee v. State, 160 Miss. 618, 134 So. 185 (1931), Lee appealed his conviction for the murder of Lanier. Under facts very similar to those now at bar, the sheriff was put on the witness stand to testify as to whether Lee had appealed to him for help after he had been assaulted by Lanier on a public road. The circuit court sustained an objection to this testimony and we reversed. In Justice Ethridge's words:
We think also the condition of the appellant's mind, at the time of the fatal shooting is important in the case at bar in determining whether the killing was malicious and willful, or with malice aforethought, or whether justifiable, and, if not, justifiable, was done under a mistaken belief, honestly and entertained, as bearing on the question of possible manslaughter. If the previous conduct of the deceased was, as testified to by Lee, hostile, it would constitute a situation highly provocative in its nature, and such conduct, on repetition, was calculated to highly exasperate and inflame the mind of an ordinarily reasonable man. It is well known that there is a marked difference between the effect of an act when accompanied by previous provocation and one not so accompanied. Men, at best, are fallible and frail beings, and, where there is a persistent effort to provoke a difficulty by one person against another, the mind reacts with violence, although it is the mind of an ordinarily prudent and reasonable man. (Emphasis added).
160 Miss. at 639, 640, 134 So. at 192.
This Court spoke again to relevancy of such testimony in Rucker v. State, 248 Miss. 65, 158 So.2d 39 (Miss. 1963) wherein Presiding Justice Percy M. Lee said:

Thus the trial judge held that such alleged conduct of Judge Phillips was not admissible because it was too remote and also because the assault, for which the defendant was then being tried, was committed upon Johnson, a mere bystander. That ruling of the court completely ignored the defendant's whole theory, namely, that Judge Phillips was the one who precipitated the trouble, incited his relatives to inflict great bodily harm upon the defendant, and aided and abetted them in their unmerciful and unlawful attack upon him. Besides, the ruling shut the defendant off from explaining that he got the pistol out of fear engendered by the threats of Phillips and had hidden it under the gallery or porch steps solely for his own self-defense in case Judge Phillips should attempt to carry out his previous threats.

In the case of Brown v. State, 88 Miss. 166, 40 So. 737, this Court, following the case of Guice v. The State, 60 Miss. 714, stated that there is a "principle of law, well settled in this state, that wherever there is doubt, confusion, dispute, or conflict as to the origin of the difficulty, or as to who was the aggressor in the difficulty, which resulted in the death, and when such fact is the pivotal one in the case, testimony of uncommunicated threats, and the nature and *520 character of previous difficulties, wantonly provoked by the deceased, is always admissible, provided the testimony shows some overt act on the part of the deceased at the time of the fatal encounter." The opinion also contained an admonition on the part of trial courts not to whittle away the rights of defendants upon trial for their lives. It further pointed out that "Every ruling should resolve any doubt in favor of the accused."
* * * * * *
The law furnishes no test of relevancy. Unless settled by statute or controlling precedent, relevancy is to be determined by logic, being the application of the principles of reason, judgment, and systematic arrangement to the matter in hand. All facts which tend either to sustain or to impeach a logically pertinent hypothesis are admissible.
* * * * * *

A pivotal fact in this case was to determine the aggressor. Consequently testimony concerning the nature and previous threats by, and difficulties with, Judge Phillips, which, the defendant asserts that Phillips wantonly provoked, was material to show the state of mind of the parties. Besides, the defendant's version as to how he came to own the pistol, if believed, negatived the element of malice and would, if believed, have been of substantial value in his defense. This evidence was important to the defense of this case, and, even if a rather close question, should have been admitted. Under all of the circumstances, it cannot be said that its exclusion was not harmful.

248 Miss. at 70-72, 158 So.2d at 41, 42.
It must be remembered that the trial judge sustained the State's objection to Purdie's testimony solely on the grounds of relevancy and "unreasonableness" and not as a self serving declaration. We cannot sanction the withholding of evidence from the jury which is highly probative of the defendant's state of mind or allow the trial judge to determine the reasonableness of the testimony. Such a holding would be completely foreign to the jurisprudence of our state and nation. Only the jury is vested with the role of determining the reasonableness of the testimony presented in a criminal prosecution. See Groseclose v. State, 440 So.2d 297 (Miss. 1983); Pate v. State, 419 So.2d 1324 (Miss. 1982); Sparks v. State, 412 So.2d 754 (Miss. 1982); Whittington v. State, 377 So.2d 927 (Miss. 1979) and literally hundreds of others.
With Purdie's testimony the jury could have concluded that Brown had taken every step a reasonable man would have taken when placed in his position. The evidence that Brown's resort to official channels of public protection and the outcome of his request for assistance is relevant not only to his state of mind at the time of the shooting but also to his reasons for being armed at the time of the confrontation.
The exclusion of Purdie's testimony was clearly erroneous. Purdie was asked to relate in a narrative form, the circumstances of Brown's appeal to him. Even if Brown's testimony about calling the police was self serving, Purdie's testimony cannot be so classified. Purdie was not an interested party and a narrative description by him of events occurring in his office cannot logically be termed self serving. The weight to be assigned to those events is a matter strictly within the jury's province.
We remain committed to the proposition that an individual on trial for his life or liberty who asserts the defense of self defense is entitled to present all relevant evidence of their state of mind at the time of the alleged incident particularly where as here, the "victim" was available to, and did in fact, testify. Considered and impartial deliberation upon only part of the evidence is simply not sufficient. If we view the trial process as a search for justice and justice as truth, this conclusion is inescapable.
Based on all of the foregoing, we hereby reverse Brown's conviction and sentence and remand this case to the Circuit Court of Grenada County for further proceedings *521 consistent with this opinion. Our original opinion in this case is withdrawn and this one is substituted in its place. The Petition For Rehearing is denied.
REVERSED AND REMANDED.
PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, J., dissent.
WALKER, Presiding Justice, dissenting:
I respectfully dissent. The majority ignores well-established case law directly on point in reaching their conclusion.
The facts as presented in the original opinion are as follows:
This is an appeal from the Circuit Court of Grenada County wherein the appellant, Randy Avery Brown, was found guilty of the aggravated assault of Connie Liddell. Brown was sentenced to serve four years in the custody of the Mississippi Department of Corrections. From that conviction and sentence he brings this appeal and assigns as error the refusal of the trial court to allow the jury to hear testimony that prior to the shooting Brown had sought legal assistance from law enforcement officials because of threats made against him by Liddell.
On March 3, 1982, Connie Liddell was sitting in his car in the parking lot of the Golden Star, a nightclub. Beside the Golden Star was a laundromat and a hair salon. Directly across the road was a playground. As Liddell sat in his car, Brown crossed the street from the direction of the playground. When Liddell saw Brown coming he got out of his car and the two approached each other. Liddell stated "We got to talking and we argued and stood up in each other's faces and was talking." Liddell stated that the argument was about "past things going on." Apparently the "past things going on" was a personal feud between the two of them that had lasted for close to a year. This feud apparently stemmed from an argument that Brown had with Liddell's uncle. Liddell stated that he tried to get Brown to go behind a building and fight but "The next I knew he shoved me off and come up shooting."
Liddell testified that after he was shot he ran behind his car and then chased Brown down an alley between the beauty salon and the Golden Star. Liddell claims to have then quit the chase and gone home. On cross-examination Liddell stated that the reason that he, an unarmed man, chased Brown, an armed man, was because "I wanted him that bad." Liddell admitted that Brown did not say anything to him before Liddell got out of his car and approached him. Liddell stated "When I got close to him I asked if he was ready to have his ass beaten." This was before Brown had said anything to Liddell. Liddell stated that he had not tried to start a fight but that "It was only words." Liddell denied ever having previously threatened Brown or passing any threats on to him through Brown's sisters. Liddell also denied ever exhibiting a gun to Brown.
Brown took the stand in his own defense and testified that he pushed Liddell only after Liddell kicked him. He stated that he pulled his gun because of prior threats and gun play Liddell made against him. Brown then detailed a number of incidents in which he claimed Liddell had threatened him. The first of these confrontations was at a car wash where the two saw each other. Brown stated that Liddell went to the back of his car, opened his trunk and pulled out a pistol and displayed it to him in a threatening manner. The second such incident occurred when Brown was coming out of a store and Liddell rode by. Liddell stopped his car and told Brown he wanted to whip him. With that Liddell went to the car trunk, pulled a gun out and Brown left. Brown stated that on another occasion he was at the playground across the street from the Golden Star with his brother. Liddell came over and started shadow boxing in front of the car with a gun stuck in the back of his pants. Brown also testified that he had been told by his sisters that Liddell came in the laundromat when they were there with a stick in his hand threatening *522 to whip Brown. Brown's brother and sisters corroborated his testimony regarding the prior threats.
The issue in this appeal concerns two attempts Brown made to introduce evidence that he had previously sought legal assistance because of his fear of Liddell. The first of these rulings came when Brown attempted to testify that he had called the police after being threatened by Liddell. Brown didn't know who he had talked to on the police force but, on a proffer, testified that the policeman advised him to get a peace bond from a justice of the peace. Brown stated that he didn't do this because he didn't have the requisite $50. Brown also proffered testimony to the effect that he had seen Mr. Purdie, City Prosecutor, for advice on the matter. The court refused to allow this testimony.
The second occurrence at which the trial court refused to allow testimony of this nature was when the defense offered Allan Purdie, City Prosecutor, as a witness. The court ruled that Purdie could not testify regarding Brown's request for assistance from him. On a proffer, Purdie stated that Brown had come to him about two weeks before the shooting and expressed concern over trouble he had been having with Connie Liddell. Purdie testified that Brown told him Liddell had been harassing him and threatening to whip him every time he saw him.
This same issue has been addressed by this Court in at least three previous cases.
In Brice v. State, 167 Miss. 255, 148 So. 348 (1933) the appellant was convicted of manslaughter in the stabbing death of Nelson Magee. Appellant claimed that he stabbed Magee in self-defense and that Magee was the aggressor. Brice offered to show that before the homicide he had appealed to the county and city police for protection from the deceased's threatened violence. The trial court refused to allow the proposed evidence. This Court agreed with the action of the lower court and stated:
The general rule is that a defendant's previous expressions of fear of the deceased, and his desire to avoid a difficulty with him, are not admissible in his behalf, unless part of the res gestae, and the defendant's previous efforts to induce a third person to effect a reconciliation between himself and the deceased or an amicable settlement of their difficulties are not admissible in his behalf. Such declarations on the part of the defendant are self-serving; if admitted in the evidence in his behalf, there would be great inducement on his part to fabricate a defense. 16 C.J., pp. 635, 636, sec. 1265; 6 Ency.Evi. pp. 763, 764. The appellate court of Alabama in Bowling v. State, 18 Ala.App. 231, 90 So. 33, 34, said: "It was not permissible for the defendant to show, after the deceased had threatened him, that he (defendant) asked the chief of police for protection. This was nothing short of a self-serving declaration on the part of the defendant; neither was it material or competent for him to show that he went to see the chief of police."
167 Miss. 260, 148 So. 348.
In Eaton v. State, 200 Miss. 729, 28 So.2d 230 (1946) this Court in a murder prosecution ruled that it was error to exclude evidence which tended to support appellant's argument that he acted in self-defense. The Court, however, found no error in excluding evidence offered of appeals made by appellant to the sheriff and mayor for protection of the law. This evidence was "incompetent" and properly excluded.
In view of the cases cited above, I am of the opinion that there was no error committed by the lower court and the judgment and conviction should be affirmed.
PATTERSON, C.J., ROY NOBLE LEE, P.J., and HAWKINS, J., join this dissent.