ROBERTS, J.,
for the Court.
¶ 1. Robert Bobo was convicted of aggravated assault on April 12, 2005, and sentenced to ten years in the custody of the Mississippi Department of Corrections. Aggrieved by the jury’s verdict, Bobo now appeals and raises the following issues:
I. WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT A DIRECTED VERDICT AND OVERRULING BOBO’S MOTION FOR A J.N.O.V.
II. WHETHER THE TRIAL COURT ERRED BY FAILING TO GRANT A NEW TRIAL AS THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. On July 30, 2004, Kevin Adam Henderson, Charles Buchanan and Steven Carpenter were playing video games at Henderson’s home. Henderson testified that while he and the other two men were inside he heard Bobo yelling and cursing outside of the home. Henderson then went outside to his porch and realized that Bobo was calling out Buchanan’s name in an effort to provoke a fight. At this point, according to Henderson’s testimony, Buchanan and Carpenter came out on the porch while Bobo continued to yell. Henderson testified that Tammy Willis was walking on the street behind Bobo and motioned to the group on the porch that Bobo had something behind his back. Henderson repeatedly asked Bobo to leave, but to no avail. Not wanting an altercation to erupt in his front yard, Henderson then asked both Bobo and Buchanan to leave. While Bobo still refused to comply, Buchanan began to walk to his car. Bobo was positioned in front of Bu *284 chanan’s car and Henderson testified he warned Buchanan to keep his distance as he made his way to his vehicle.
¶ 3. Heeding Henderson’s advice, Buchanan attempted to stay away from Bobo, but because of Bobo’s position close to Buchanan’s car door, he was forced to come within close proximity to Bobo. Henderson further testified that as Buchanan neared his car, Bobo attacked him from behind and Buchanan responded by punching Bobo. Henderson stated that the pair tripped over a row of crossties that lined the driveway and Buchanan ended up on top of Bobo as they continued to fight. Henderson continued that he did not see a knife, but after seeing blood come from the side of Buchanan’s body Bobo was hitting, he concluded that Bobo must have had a knife. Wanting to break the pair up, Henderson grabbed a nearby shovel and struck one of the crossties. Henderson testified that he held Bobo at shovel-point while Buchanan got up, at which point Bobo returned to his home. Finally, Henderson testified that this was not the first time Bobo had attempted to start a fight with Buchanan, and that there had been several occasions when Buchanan was visiting and Bobo would “call him out.” Buchanan’s and Carpenter’s testimony regarding the event was nearly identical to Henderson’s.
¶4. Dr. Sarah Smeltzer testified that she attended to Buchanan when he arrived at North Mississippi Medical Center in West Point. She testified that Buchanan suffered from ten significant stab wounds, two of which were life threatening. She further testified that the wounds Buchanan received were consistent with the knife found at Bobo’s home.
¶ 5. Tammy Willis lived in between Bobo and Henderson. She was returning from her mother’s house on the other side of Henderson’s home when she saw Henderson, Buchanan and Carpenter arguing with Bobo. She testified that as she walked behind Bobo she noticed that he was holding an opened pocketknife in his right hand behind his back. She stated she attempted to motion to Henderson and the others, but did not say anything out loud out of a fear Bobo would turn on her in retaliation. She also testified that she overheard Bobo yelling “if you step off the porch, I’ll cut your head off.” Finally, she testified that she returned to her home in order to forward her phone calls to her mother’s house, and approximately three minutes later she left her house to return to her mother’s and heard a sound she identified as Henderson hitting a shovel and saw Henderson pointing a shovel down on the ground.
¶ 6. Bobo testified that he acted in self-defense. He stated that he walked to Henderson’s house in order to check on Henderson’s dog, but when he arrived he saw Henderson’s girlfriend, Heather Kim-brough, Buchanan and an individual named Chris Johnson on Henderson’s porch. Bobo testified that when he saw Buchanan, he dropped the golf club he was using as a cane in an effort to indicate he did not want a confrontation. However, Bobo stated that Buchanan got off the porch and came towards his car. Bobo further testified that when Buchanan passed him, Buchanan blind-sided him and knocked him out. According to Bobo’s testimony, when he woke up Buchanan was on top of him hitting him. At this point, according to Bobo, he reached into his pocket, retrieved his pocketknife, opened the pocketknife and stabbed Buchanan a number of times in self-defense. Bobo testified that at no point did he see Henderson, and that Henderson never stopped the fight.
¶ 7. Bobo was indicted on October 7, 2004, on the charge of aggravated assault *285 in violation of Mississippi Code Annotated section 97-3-7. His trial was held on April 11, 2005, and the jury found Bobo guilty as charged. Bobo was subsequently sentenced on April 12, 2005, to ten years in the custody of the Mississippi Department of Corrections followed by five years’ post-release supervision. Bobo then filed his motion for an out-of-time appeal and appointment of counsel on July 18, 2005, stating that his trial counsel neglected to file a timely notice of appeal [1]. The lower court then, sua sponte, set October 3, 2005, to hear Bobo’s, then unfiled, motion for new trial. The day of the hearing, Bobo filed his motions for leave to appeal in forma pauperis, motion for judgment notwithstanding the verdict or, in the alternative, a new trial and notice of appeal. Additionally, on October 3, 2005, the trial court granted Bobo’s motion for leave to appeal in forma pauperis. Bobo’s motion for a new trial was summarily denied on October 12, 2005.
ANALYSIS
I. WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT A DIRECTED VERDICT AND OVERRULING BOBO’S MOTION FOR A J.N.O.V.
¶ 8. Our standard of review for denials of a motion for judgment notwithstanding the verdict and directed verdict is the same. Jefferson v. State, 818 So.2d 1099(¶ 30) (Miss.2002). A judgment notwithstanding the verdict and directed verdict challenge the legal sufficiency of the evidence presented at trial. Id. Under this standard, this Court considers all of the evidence in the light most favorable to the State and gives the State the benefit of all favorable inferences that may be drawn from the evidence. Seeling v. State, 844 So.2d 439(118) (Miss.2003). This Court is “not at liberty to direct that the defendant be discharged short of a conclusion on our part that given the evidence, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt the defendant was guilty.” Ashford v. State, 583 So.2d 1279,1281 (Miss.1991).
¶ 9. The issue we are presented with is whether, given the evidence contained in the record, no reasonable juror could find Bobo guilty of aggravated assault beyond a reasonable doubt. Mississippi Code Annotated section 97 — 3—7(2)(b) directs that an individual is guilty of aggravated assault if he “attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm[.]” Miss.Code Ann. § 97-3-7 (Rev.2006). The evidence presented at trial indicated that Bobo walked to Henderson’s house and began to taunt Buchanan. Once Buchanan was outside, Bobo continued his verbal barrage and refused to leave Henderson’s property. With an open pocketknife concealed behind his back, as identified by Willis as she walked home from her mother’s house, Bobo positioned himself in front of Buchanan’s car, and as Buchanan was forced to pass him in an attempt to leave, Bobo struck him from behind. During the ensuing struggle between the two men, Bobo stabbed Buchanan no less than ten times, two of which were identified as life threatening. When viewed in a light most favor *286 able to the State, the evidence, without question, more than satisfies our standard of review.
II. WHETHER THE TRIAL COURT ERRED BY FAILING TO GRANT A NEW TRIAL AS THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 10. The standard of review for denial of a motion for new trial is well-established.
In determining whether a jury verdict is against the overwhelming weight of the evidence this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal. As such, if the verdict is against the overwhelming weight of the evidence, then a new trial is proper.
Baker v. State, 802 So.2d 77(¶ 14) (Miss.2001) (citing Dudley v. State, 719 So.2d 180 (¶¶ 7-8) (Miss.1998)).
¶ 11. Accepting the evidence as true which supports the verdict, we cannot say that allowing it to stand would amount to an unconscionable injustice. The evidence showed that Bobo initiated the altercation, struck the first blow and repeatedly stabbed Buchanan. In line with our discussion above, this issue is without merit.
¶ 12. THE JUDGMENT OF THE CIRCUIT COURT OF CLAY COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FIVE YEARS’ POST-RELEASE SUPERVISION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO CLAY COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR.

. The record indicates that the confusion over the timing of Bobo’s post-trial motions and notice of appeal stemmed from a misunderstanding between he and his attorney at trial regarding continued representation post-trial. while Bobo’s appeal would appear to be untimely, we nonetheless rule on its merits as Bobo’s particular situation would fall under Deloach v. State, 890 So.2d 852 (¶¶ 11-16) (Miss.2004).