LEE, P.J.,
for the Court.
PROCEDURAL HISTORY
¶ 1. On February 10, 2005, a jury in the Forrest County Circuit Court found Jerry Lavon Rayborn guilty of burglary of a dwelling. Rayborn was sentenced as a habitual offender to serve twenty-five years in the custody of the Mississippi Department of Corrections without the possibility of parole. Rayborn subsequently filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. The trial court denied Rayborn’s motion and Rayborn now appeals to this Court asserting two issues. Rayborn states that the trial court erred in allowing the State to amend the indictment to add habitual offender language and that the trial court erred in refusing to grant his motion for a directed verdict and peremptory instruction.
FACTS
¶ 2. On June 13, 2003, around 9:00 a.m., Elizabeth Hope was asleep in the bedroom of her house located in Hattiesburg, Mississippi. Hope awoke to the sound of her dog barking at a man standing at the foot of her bed. Hope asked the man what he was doing and he stated that Hope’s landlord asked him to make repairs to the house. Hope asked the man to leave immediately, which he did. Hope thought that the man had the wrong house and so she did not call the police.
¶ 3. Later that same day, Hope received a call from Ruth Cooksey. Cooksey informed Hope that a man who had recently done some yardwork for her approached her with a check made out to “cash” in the amount of $200. Although she refused to cash the check for this man, Cooksey noted Hope’s name on the check. Cooksey and Hope discussed the man and realized that their descriptions of him matched. Hope called the police and informed them of the burglary. The only items Hope noticed missing from her house were her checkbook, which she remembered leaving in the kitchen, and a spare house key, which was hidden under the doormat.
¶ 4. At some point Cooksey obtained a copy of the man’s drivers license photo at a local bicycle shop where she had taken him a few days before to have his bike fixed. The man was identified as Jerry Rayborn. Both Hope and Cooksey were able to pick Rayborn out of a photographic lineup conducted sometime later at the Hattiesburg Police Department.
DISCUSSION
I. DID THE TRIAL COURT ERR IN ALLOWING THE STATE TO AMEND THE INDICTMENT TO INCLUDE HABITUAL OFFENDER LANGUAGE?
¶ 5. In his first issue on appeal, Rayborn argues that the trial court erred *72 in allowing the State to amend the indictment to include habitual offender language. The State failed to indict Rayborn as a habitual offender because at the time Rayborn’s pen pack was unavailable. Two days prior to trial the State made a motion to amend the indictment. The trial judge decided that he would “take this matter under advisement. It doesn’t have any bearing whatsoever on the trial of this matter.” The trial judge later granted the motion to amend the indictment. We note that these prior convictions were not mentioned in front of the jury.
¶ 6. According to Uniform Circuit and County Court Rule 7.09, “all indictments may be amended as to form but not as to the substance of the offense charged.” The rule specifically states that an indictment may be amended to charge the defendant as a habitual offender. The rule further provides that “amendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised.”
¶ 7. Rayborn was not unfairly surprised by the motion to amend the indictment to charge him as a habitual offender. “The test for whether an amendment to the indictment will prejudice the defense is whether the defense as it originally stood would be equally available after the amendment is made.” Eakes v. State, 665 So.2d 852, 859-60 (Miss.1995). Since an amendment charging a defendant as a habitual offender does not affect the substance of the crime charged, but only the sentencing, Rayborn’s defense to the burglary of a dwelling charge was unaffected by the amendment. Adams v. State, 772 So.2d 1010, 1020(¶ 50) (Miss.2000). We cannot say that Rayborn was unfairly surprised or prejudiced in his defense by the motion to amend the indictment; thus, this issue is without merit.
II. DID THE TRIAL COURT ERR IN DENYING RAYBORN’S MOTION FOR A DIRECTED VERDICT AND MOTION FOR A PEREMPTORY INSTRUCTION?
¶ 8. In his other issue on appeal, Rayborn argues that the trial court erred in denying his motion for a directed verdict and his motion for a peremptory instruction. Rayborn also claims that the trial court further erred in denying his motion for a JNOV or, in the alternative, his motion for a new trial.
¶ 9. Our standard of review for denials of a motion for a JNOV, directed verdict and peremptory instruction is the same. Jefferson v. State, 818 So.2d 1099, 1111(¶ 30) (Miss.2002). All three challenge the legal sufficiency of the evidence presented at trial. Id. In reviewing the sufficiency of the evidence, all evidence supporting the guilty verdict is accepted as true, and the State must be given the benefit of all reasonable inferences that can be reasonably drawn from the evidence. Bell v. State, 910 So.2d 640, 646(¶ 16) (Miss.Ct.App.2005). Furthermore, it is well-settled law that the jury determines the credibility of witnesses and resolves conflicts in the evidence. Evans v. State, 725 So.2d 613, 680-81 (¶ 293) (Miss.1997).
¶ 10. Hope was awakened by her dog barking at a strange man in her bedroom. Although Rayborn stresses that Hope had spent the prior evening drinking and partying, having only gone to bed around 5:30 a.m., Hope did have a conversation with the man and was able to identify him at a photographic lineup. Rayborn had one of Hope’s checks in his possession on the same day he was in Hope’s house and attempted to get Cooksey to cash it for him. According to Cooksey, Rayborn became agitated when she refused to give him cash. The jury clearly found Hope *73 and Cooksey to be more credible witnesses than Rayborn. We find no merit to this issue.
¶ 11. Rayborn also takes issue with the fact that Hope did not call the police after finding Rayborn in her bedroom. Ray-born stresses the fact that Hope did not think her house had been burglarized at the time she saw Rayborn. As burglary is a crime against property and not a person, we fail to see how Hope’s actions or beliefs regarding this burglary are relevant.
¶ 12. THE JUDGMENT OF THE FORREST COUNTY CIRCUIT COURT OF CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE AS A HABITUAL OFFENDER TO TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF PAROLE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO FORREST COUNTY.
KING, C.J., MYERS, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.