982 So.2d 471 (2008)
John Robert GREEN a/k/a Johnny Green, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-KA-01984-COA.
Court of Appeals of Mississippi.
January 29, 2008.
Rehearing Denied April 29, 2008.
*472 B. Brennan Horan, Mark Kevin Horan, K. Elizabeth Davis, Greenwood, attorneys for appellant.
Office of the Attorney General by Stephanie Breland Wood, attorney for appellee.
Before LEE, P.J., IRVING and ROBERTS, JJ.

FACTS AND PROCEDURAL HISTORY
LEE, P.J., for the Court.
¶1. On the morning of July 23, 2005, the body of Ricky Taylor was found by the side of a road in Sardis, Mississippi. Taylor had been shot once in the head at close range and once in the left leg. Jimmy Jenkins lived approximately 175 feet from where Taylor's body was found. Jenkins stated that he heard three gunshots around 6:00 a.m. Moses Dean was driving to work that morning and saw Taylor's body at approximately 6:15 a.m. Dean then called 911. John Lantern, a deputy with the Panola County Sheriff's Department, responded to the scene. While Lantern was at the crime scene, John Green drove up and asked, "Was that Ricky Taylor?" After Lantern stated that he could not give Green that information, Green responded, "Oh, yeah, that is Ricky Taylor." According to Lantern, the position of Taylor's *473 body was blocked from Green's view by various vehicles. Green then drove away, but Lantern noted that he drove past the crime scene two more times.
¶ 2. Sometime later that morning Green was detained by the police. Taylor had left his parents' house around 5:30 a.m. that morning with Green. Green was asked by a police officer if he knew why he was being picked up and he responded in the affirmative. Over the course of Green's interrogation, Green gave the officers several different versions about how Taylor was murdered. In one version, Green stated that he dropped Taylor off at the intersection of Old Panola Road and Highway 315. In another version, Green stated that he saw a man named Ricky Nelson shoot Taylor. Green also described two other scenarios where he shot Taylor in self-defense. Ultimately, Green confessed to shooting Taylor.
¶3. On September 21, 2006, a jury in the Circuit Court of Panola County found Green guilty of murder. Green was sentenced to serve a term of life in the custody of the Mississippi Department of Corrections. Green filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. The trial court denied Green's motion and Green now appeals his conviction and sentence asserting numerous issues. As many of Green's issues are repetitive, we have consolidated them as follows: (1) the trial court erred in allowing the jury to hear Green's taped confession; (2) the trial court erred in failing to grant his motion for a directed verdict; (3) the trial court erred in not allowing him to submit the case to the jury on the issue of manslaughter and not murder; (4) the trial court erred in refusing certain jury instructions; and (5) the jury's verdict was against the overwhelming weight of the evidence; thus, the trial court should have granted a new trial.

DISCUSSION
I. DID THE TRIAL COURT ERR IN ALLOWING THE JURY TO HEAR GREEN'S TAPED CONFESSION?
¶4. In his first issue on appeal, Green argues that the trial court erred in allowing the jury to hear his taped confession. Green claims that the trial court should have suppressed this confession and not admitted it into evidence during the trial. For a confession to be admissible it must not have been given as a result of promises, threats, or inducements. Dancer v. State, 721 So.2d 583, 587(¶17) (Miss. 1998). The prosecution must prove beyond a reasonable doubt that the confession was made voluntarily, and it meets this burden by producing "testimony of an officer, or other persons having knowledge of the facts, that the confession was voluntarily made without threats, coercion, or offer of reward." Morgan v. State, 681 So.2d 82, 86-87 (Miss.1996). Our standard of review regarding the admissibility of confessions is as follows: "So long as the court applies the correct legal standards, `we will not overturn a finding of fact made by a trial judge unless it be clearly erroneous.' Where, on conflicting evidence, the court makes such findings this Court generally must affirm." Alexander v. State, 610 So.2d 320, 326 (Miss.1992) (internal citations omitted).
¶5. Green argues that his statement was not voluntarily made. He contends that the statement was a result of coercion, promises and other inducements made by Craig Sheley, a deputy for the Panola County Sheriff's Department. Green made two statements on July 23, 2005. One occurred during the morning, and the other occurred at approximately 6:45 p.m. *474 Both statements were recorded and transcribed. The jury heard the second statement, but not the first. The transcript of the first statement was not included in the record on appeal. During the suppression hearing, Green testified that, based upon certain statements made by Deputy Sheley, he confessed to shooting Taylor in self-defense so that he would get bond set and go home. At first, Green claimed that Nelson shot Taylor, but he later changed his story and confessed to killing Taylor himself. Green stated that he was a longtime acquaintance of Deputy Sheley, and he trusted him. Green testified that Deputy Sheley kept asking Green to tell him the truth and saying, "we'll get through this."
¶6. Deputy Sheley testified that Green was given Miranda warnings before each statement. Deputy Sheley stated that Green (1) was alert during the interview, (2) was not threatened in any way, (3) was not made any promises of leniency, and (4) was not coerced into confessing. Master Sergeant John Marsh of the Mississippi Highway Patrol Bureau of Investigation was present during the second statement. Sergeant Marsh testified that (1) Green never asked for an attorney; (2) Green was not told to claim self-defense; (3) Green did not ask for bond; (4) Green did not ask to make a phone call; and (5) Green was not told to claim that a scratch on his face was obtained in a scuffle with Taylor.
¶7. In its ruling the trial court noted that Green, as a bail bondsman, understood criminal procedure in that he knew he had the right to remain silent and to ask for an attorney. In denying Green's motion to suppress, the trial court did not find any evidence of overreaching by Deputy Sheley or Sergeant Marsh nor any evidence of promises made to Green to solicit his confession. We can find no error with the trial court's determination.
II. DID THE TRIAL COURT ERR IN FAILING TO GRANT GREEN'S MOTION FOR A DIRECTED VERDICT?
¶8. In his second issue on appeal, Green argues that the trial court erred in denying his motion for a directed verdict at the close of the State's case-in-chief. A motion for a directed verdict challenges the legal sufficiency of the evidence. Our standard in regards to these challenges is well stated: In reviewing the sufficiency of the evidence, all evidence supporting the guilty verdict is accepted as true, and the State must be given the benefit of all reasonable inferences that can be reasonably drawn from the evidence. Bell v. State, 910 So.2d 640, 646 (¶16) (Miss.Ct.App.2005). Furthermore, the jury determines the credibility of witnesses and resolves conflicts in the evidence. Evans v. State, 725 So.2d 613, 680-81 (¶293) (Miss.1997).
¶9. The State argues that Green is procedurally barred from raising this issue on appeal because he did not renew his motion at the close of all the evidence. However, Green requested a peremptory instruction of not guilty, which has been held to preserve the issue for appellate purposes. Harris v. State, 413 So.2d 1016, 1018 n. 3 (Miss.1982).
¶10. Green was convicted of murder pursuant to Mississippi Code Annotated section 97-3-19(1)(a) (Rev.2006), which defines murder as "[t]he killing of a human being without the authority of law by any means or in any manner . . . [w]hen done with deliberate design to effect the death of the person killed. . . ." Green argues that the State failed to prove beyond a reasonable doubt that he killed Taylor with deliberate design. Green claims that the lack of any physical evidence connecting *475 him to the crime scene and his supposed coerced statements claiming self-defense are sufficient to overturn his conviction.
¶11. Although the gun was never found by authorities, we find that there was sufficient evidence for the jury to find Green guilty of murder. Green was Taylor's bail bondsman and Taylor owed Green money. Green was at Taylor's house the night before the murder and picked Taylor up at 5:30 a.m. on the day of the murder. A neighbor heard three gunshots around 6:00 a.m. and called the authorities, whereupon Taylor's body was discovered. Green drove by the murder scene and knew the victim was Taylor. Green told approximately four different versions of what occurred on the day of the murder. In his taped confession, Green admitted to shooting Taylor with a .40 caliber Smith & Wesson handgun, which he discarded after the shooting. A .40 caliber shell hull was found approximately eleven feet from Taylor's body. There was testimony that Green had made comments about killing Taylor. Although Green claimed at one point, and at trial, that Nelson killed Taylor, he did not call the police to report the murder nor did he give this information to the police when he was detained.
¶12. This issue is without merit.
III. DID THE TRIAL COURT ERR IN NOT ALLOWING GREEN TO SUBMIT THE CASE TO THE JURY ON THE ISSUE OF MANSLAUGHTER AND NOT MURDER?
¶13. In his third issue on appeal, Green contends that the trial court erred in not allowing him to submit the case to the jury on the issue of manslaughter rather than murder. During his motion for directed verdict at the close of the State's case-in-chief, Green made a motion to submit the case to the jury on manslaughter. The trial court denied the motion. The trial court found that the State had made a prima facie case of homicide but that it would be premature to rule upon whether a manslaughter instruction was warranted. As we have already found sufficient evidence to support the murder conviction, we agree with the trial court's determination. We find it more appropriate to discuss the issue of manslaughter in relation to Green's argument below concerning jury instructions.
IV. DID THE TRIAL COURT ERR IN REFUSING CERTAIN JURY INSTRUCTIONS?
¶14. In his next issue on appeal, Green argues that the trial court erred in refusing to grant instructions D-1, D-8, D-10, D-11, D-12, and D-13. In reviewing the denial of a jury instruction, the appellate court must consider not only the denied instruction but also all of the instructions which were given to ascertain if error lies in the refusal to give the requested instruction. See Coleman v. State, 697 So.2d 777, 782 (Miss.1997). "A defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in another instruction, or is without foundation in the evidence." Heidel v. State, 587 So.2d 835, 842 (Miss.1991). We will discuss each proposed instruction separately.
D-1
¶15. Green's instruction D-1 is a peremptory instruction. Peremptory instructions and directed verdicts both challenge the sufficiency of the evidence; thus, our standard of review for denials of both are the same. Jefferson v. State, 818 So.2d 1099, 1111 (¶30) (Miss.2002). As we have *476 previously found that the evidence was sufficient to support the guilty verdict, this instruction was properly refused.
D-8
¶16. Green's instruction D-8 instructed the jury to assess the weight and credibility of the witnesses and to consider whether Green's taped statements were made of his own free will. The trial court denied this instruction finding that it tried to "single out certain parts of the trial and urg[ed] the Court to comment on testimony of the defendant . . . I don't think I should single out portions of it and call the jury's attention to it." Furthermore, the jury was instructed as to its function of determining the weight and credibility of the evidence in instruction 1. We find no merit to this issue.
D-10
¶17. Green's instruction D-10 instructed the jury to consider manslaughter. The trial court refused this instruction finding that Green's defense was not self-defense, rather Green accused someone else of shooting Taylor. Taped confessions notwithstanding, Green's testimony at trial was that he did not shoot Taylor. Green did not produce evidence at trial of self-defense; thus, this instruction was properly refused.
D-11, D-12 and D-13
¶18. Green's instructions D-11, D-12, and D-13 all instruct the jury on self-defense. The trial court refused all these instructions finding that Green was not claiming self-defense as his theory of the case. As previously stated, Green denied shooting Taylor. This issue is without merit.
V. WAS THE VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶19. In his last issue on appeal, Green argues that the verdict was against the overwhelming weight of the evidence; thus, we should grant him a new trial. Our standard of review concerning the overwhelming weight of the evidence is well settled: "[W]e will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Bush v. State, 895 So.2d 836, 844 (¶18) (Miss.2005) (citing Herring v. State, 691 So.2d 948, 957 (Miss. 1997)). The appellate court sits as a hypothetical "thirteenth juror." Id. Therefore, the Court weighs the evidence "in the light most favorable to the verdict." Id. If, in this position, the Court disagrees with the verdict of the jury, "the proper remedy is to grant a new trial." Id.
¶20. In his argument Green simply incorporates by reference all facts, arguments, and authorities as set out in his issues concerning the failure to grant a directed verdict, the failure to submit the issue of manslaughter to the jury, and the denial of his peremptory instruction. These issues relate to the legal sufficiency of the evidence, a theory separate and distinct from an argument concerning the overwhelming weight of the evidence. Incorporating any authority from issues relating to the legal sufficiency of the evidence does not support a determination of whether the verdict should be overturned and a new trial granted. Green has failed to cite relevant authority to support his claim; therefore, we find the issue procedurally barred. McClain v. State, 625 So.2d 774, 781 (Miss.1993).
¶21. We note that Green also argues that the trial court should have granted his motion for a judgment notwithstanding the verdict. Just as a motion for a directed verdict, a motion for a JNOV tests the legal sufficiency of the evidence. Jefferson, *477 818 So.2d at 1111 (¶30). As we have previously determined that there was sufficient evidence to support the verdict, we find no merit to this argument.
¶22. THE JUDGMENT OF THE PANOLA COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., MYERS, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.